UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUBAREZ AHMED,

        Petitioner,                      Civil No. 2:06-14106
                                                Honorable David M. Lawson

v.

HUGH WOLFENBARGER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Mubarez Ahmed, presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, filed through counsel, the petitioner challenges his convictions for two counts of second-degree murder, Mich. Comp. Laws § 750.317, and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The respondent has filed a response to the petition addressing the merits of each of the petitioner's five arguments, which include issues relating to the admission of evidence – including out-of-court statements, jury instructions, prosecutorial misconduct, and the legality of the petitioner's arrest. The Court has read the petition and supporting brief carefully and finds that the petitioner's claims lack merit. Therefore, the Court will deny the petition.

I.

The petitioner's conviction arises from a shooting that occurred at the intersection of Lumley and Kirkwood in the City of Detroit on February 9, 2001, sometime between noon and 1:00 p.m. The shooting resulted in the deaths of LaTanya White and Lavelle Griffin, who were passengers in a gray Chevrolet. There were several people who heard the shots and observed what happened. For

instance, Charles Henderson testified that he was delivering the mail on the day of the shooting. He heard a car honking its horn and saw a red Ford vehicle, with its horn blaring, following the Chevrolet. He saw the red car pull up alongside the gray car, and heard five or six gunshots as the occupant of the red car shot into the grey car. He testified that there were at least two people inside the red vehicle. Others confirmed this version of the events.

However, only one person gave evidence that identified the shooter. Izora Woods testified that she was driving her car on the day of the shooting at the intersection of Lumley and Kirkwood when she saw the two vehicles pull up alongside one another on Kirkwood. She said the occupants of each car were arguing with one another. After words were exchanged, she saw someone in the red car roll down a tinted window and shoot at the grey car. Woods was unable to ascertain how many occupants were in the red car because the windows were tinted. After the shots were fired, the driver of the red car drove past her. She identified the petitioner as the driver of the vehicle. Woods identified the petitioner at a lineup conducted two or three days after the shooting.

The petitioner was arrested and put in a lineup as a result of an anonymous tip given to the police. Police Sergeant Ernest Wilson testified that he had received an anonymous tip regarding who may have been involved in the shooting. He never described to the jury the substance of the anonymous report, but he did testify that based upon that information, he obtained a photograph of the petitioner, and after comparing the photograph with Izora Woods's description of the perpetrator, he had the petitioner arrested. There was no other evidence connecting the petitioner to the crimes, although the State offered crime scene photographs that depicted the victims' corpses in the Chevrolet.

A Wayne County, Michigan jury convicted the petitioner of two counts of second-degree murder and two counts of possession of a firearm during the commission of a felony. On March 25, 2002, the petitioner was sentenced to concurrent forty-to-sixty-year prison terms for each of the murder convictions, plus consecutive two-year terms for each of the felony-firearm convictions.

The petitioner filed a direct appeal in the Michigan Court of Appeals in which he argued that: (i) his right to confront witnesses against him was violated by admission of anonymous tip evidence; (ii) the court committed a jury instruction error when it did not give a requested instruction of eyewitness identification; (iii) the prosecutor committed certain misconduct; (iv) the court improperly admitted the photographs of the victim; and (v) the petitioner's identification should have been suppressed because it was the result of an illegal arrest. The Michigan Court of Appeals affirmed the petitioner's convictions. *People v. Ahmed*, No. 242183 (Mich. Ct. App. Oct. 14, 2003).

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which denied leave to appeal. *People v. Ahmed*, No. 125082 (Mich. June 10, 2004) (Cavanagh & Kelly, JJ., dissenting). The petitioner filed his petition in this Court raising the same issues.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11 (emphasis added); *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

In his first claim for habeas relief, the petitioner argues that his rights under the Confrontation Clause were violated when the trial court admitted evidence regarding an anonymous tip which led to the petitioner's arrest and identification. Sergeant Ernest Wilson testified that he received an anonymous tip regarding a person who may have been involved in the shooting, including the alleged shooter's nickname. He testified that, based upon that information, he obtained a photograph of the petitioner and, after comparing the photograph to a description of the shooter given to him by Izora Woods, he had the petitioner arrested. Wilson never testified to any

statements that the tipster gave him, nor did he provide the jury with the substance of the anonymous tip.

The Confrontation Clause of the Sixth Amendment guarantees that all criminal defendants "shall enjoy the right . . . to be confronted with the witnesses against [them]." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "that the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405 (quoting *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965)) (internal quotation marks omitted).

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, even if the trial court finds the statements to be otherwise reliable. Although the Supreme Court declined to "spell out a comprehensive definition of 'testimonial,'" the Court held that, at a minimum, the term covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Ibid.*

A tip by a confidential informant to a police officer is considered testimonial in nature. *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). Therefore, absent a showing of

unavailability and an opportunity to cross-examine the tipster, the prosecution may not offer the tipster's statements as evidence against the accused to prove the substance of the assertions in the statement. But testimony by a police officer that he learned "something" from an informant and then acted on it does not place out-of court statements before the jury. The *Cromer* court explained:

> Cromer's Confrontation Clause rights were not violated by [such] testimony. This exchange at least arguably did not even put before the jury any statements made by the C[onfidential] I[nformant]. *See United States v. Dunbar*, 104 Fed. Appx. 638, 2004 WL 1614932, at *1 (9th Cir. July 19, 2004) (finding no Confrontation Clause violation where no testimonial evidence provided by CI was ever introduced into evidence); *United States v. Stone*, 222 F.R.D. 334, 339 (E.D. Tenn. 2004) (same). Even if testimonial statements of an out-of-court declarant were revealed by this testimony, Cromer's confrontation right was not implicated because the testimony was provided merely by way of background. *See United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990) (finding Confrontation Clause not implicated where assertions not offered for their content, but merely to explain why government commenced investigation). The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 124 S.Ct. at 1369 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Any out-of-court statements alluded to by [the witness] at this juncture served the purpose of explaining how certain events came to pass or why the officers took the actions they did. Because the statements were not offered to establish the truth of the matter asserted, the Confrontation Clause does not apply.

*Id.* at 676.

The Michigan Court of Appeals held that Sergeant Wilson's testimony was properly admitted because his "testimony was clearly limited in scope to showing how the police selected defendant as a suspect." *Ahmed*, slip op. at 2. Sergeant Wilson's testimony regarding the confidential informant provided only general background information and an explanation as to why the investigation proceeded as it did. The conclusion that Wilson's testimony did not violate the Confrontation Clause or otherwise render the petitioner's trial fundamentally unfair was not contrary to or an unreasonable application of the Supreme Court precedent.

B.

The petitioner next argues that his right to a fair trial was violated when the trial court denied his proposed jury instruction that stressed the fallibility of eyewitness identification. The petitioner also argues that the trial court erred in failing to give a cautionary jury instruction regarding Sergeant Wilson's testimony about the anonymous informant.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

Michigan law encourages trial judges to instruct the jury on factors to use when evaluating eyewitness testimony, including information that such testimony may be inherently unreliable. *See People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973). However, other federal courts have held that a comprehensive instruction on the dangers of misidentification is not required by the Constitution. *See Carey v. Maryland*, 617 F. Supp. 1143, 1148-49 (D. Md. 1985), *aff'd*, 795 F.2d 1007 (4th Cir. 1986); *Jones v. Smith*, 599 F. Supp. 1292, 1304 (S.D. Ala. 1984), *aff'd*, 772 F.2d 668 (11th Cir. 1985). The petitioner has not cited any clearly established Supreme Court precedent that can be read as requiring such an instruction. Therefore, under the AEDPA, 28 U.S.C. § 2254(d)(1), this claim is not a basis for habeas relief. *Williams*, 529 U.S. at 376-80 (requiring clearly established

Supreme Court precedent). And in all events, the state trial judge actually gave an instruction outlining factors for the jury to evaluate when considering eyewitness identification testimony. *See* Trial Tr., Feb. 28, 2002, at 158-59.

In addition, the petitioner argues that the trial court erred in failing to give a cautionary instruction regarding the anonymous tip testimony. A limiting instruction was requested, and state law requires that one be given in such circumstances. *See* Mich. R. Evid. 105. The failure to give a limiting instruction can form the basis for habeas relief, especially when "the possibility of egregious unfairness" may result. *Turnbill v. Bordenkircher*, 634 F.2d 336, 337 (6th Cir. 1980) (internal quotations omitted). However, the purpose of a limiting instruction is to restrict the scope of evidence so that the jury does not consider it for an improper purpose. In this case, there was no testimony as to the substance of the informant's statement to Officer Wilson. There was no suggestion that the tipster told Wilson that the petitioner was the shooter. There was little danger that the jury would consider Wilson's testimony for any purpose other than to explain why the police investigation proceeded in the manner it did. The failure to give such an instruction did not so infect the entire trial as to violate the petitioner's right to due process.

C.

The petitioner next argues that habeas relief should be granted because the prosecutor engaged in misconduct by disparaging defense counsel and vouching for the prosecution's case. "Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel*

*v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must examine "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The petitioner claims that the prosecutor improperly criticized defense counsel when he characterized his argument as "grasping at straws." Trial Tr., Feb. 28, 2002, at 141. The prosecutor also argued as follows:

> [Defense counsel] knows he has nothing, so he's got to make something out of nothing. There's an adage in law school that they teach us . . . it goes something like this. "If the law is against you, argue the facts. If the facts and law are against you, just argue." And that's what you got from Mr. Hart. He just argued about everything. Red car, maroon, burgundy . . . . He's arguing about things because he has nothing here.

*Ibid.*

The Michigan Court of Appeals (the only state court to issue a reasoned opinion on this claim) held that the foregoing remarks did not constitute prosecutorial misconduct. Instead, the court of appeals held that the argument was a response to defense counsel's closing argument and did not impact the petitioner's right to a fair trial. *Ahmed*, slip op. at 3. This Court agrees. A prosecutor may present to the jury all reasonable inferences from the evidence admitted at trial, if such evidence relates to the prosecutor's case. *See United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999). The prosecutor's arguments amounted to comments on the relative weakness of the defense's case, no more than that. The prosecutor need not resort to the most diplomatic construction in phrasing his or her commentary, as long as the argument is directed to the evidence presented and is not designed to inflame the jury's passion. The prosecutor need not avoid confrontation, as long as the commentary addresses the proofs and does not disparage defense counsel. The prosecutor may point out weaknesses in the defense and extol the strength of the

State's own case, as long as the argument is bound by the actual evidence and fair inferences and does not suggest personal belief or knowledge of facts outside the evidence. The prosecutor in this case remained within those bounds. The state courts' conclusion that the argument was proper was a reasonable application of Supreme Court precedent.

The petitioner also argues that the prosecutor engaged in misconduct when he vouched for the credibility of prosecution witness Izora Woods. In rebuttal, the prosecutor stated, "Ms. Woods was a good witness. She didn't hesitate. She didn't equivocate." Trial Tr., Feb. 28, 2002, at 141. He also stated that the prosecutor's office does not "just grab people off the street and say you're going to come in and testify. You got to tell us something that leads us to believe you have some information about the case. Those are the people you heard from." *Ibid.*

The Michigan Court of Appeals held that the prosecutor's arguments did not amount to improper vouching, stating:

> Defense counsel attacked the witness'[s] credibility during his closing argument. In rebuttal, the prosecutor remarked that the witness was a good witness who did not equivocate or seem unsure. The prosecutor's comments did not suggest that he had some special knowledge about the witness'[s] truthfulness. Because these comments were responsive to defense counsel's attack on Woods'[s] credibility, they were not improper.

*Ahmed*, slip op. at 3.

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness." *United States v. Trujillo*, 376 F.3d 593, 607-08 (6th Cir. 2004) (quoting *United States v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001)). The State prosecutor in this case indicated no such personal belief in the witness's credibility. The state court's conclusion that the prosecutor merely responded to defense counsel's efforts to discredit

Woods's credibility, and that he did not place the prestige of the prosecutor's office behind Woods, was reasonable and is supported by the record. Therefore, the petitioner has not shown that the state court's conclusion was contrary to or an unreasonable application of Supreme Court precedent.

D.

For his fourth argument, the petitioner contends that his right to a fair trial was violated when the trial court admitted three gruesome photographs of a victim at the crime scene. The Michigan Court of Appeals held that the photographs were properly admitted to establish Petitioner's intent, stating, in pertinent part:

> Photographs are admissible if they are relevant under MRE 401 and their probative value is not substantially outweighed by the danger of unfair prejudice under MRE 403. *People v. Mills*, 450 Mich. 61, 66; 537 N.W.2d 909 (1995). Relevant evidence "[m]eans evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401.
>
> The photographs were essential in proving that the victim had no weapons and was in a relaxed state, which goes to defendant's intent. Having decided that the photographs are relevant under M.R.E. 401, it is then necessary to evaluate their probative value under M.R.E. 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403. Like the photographs in *Mills*, the photographs here were accurate representations of the victim's body. They "did not present an enhanced or altered representation of the injuries." *Mills*, *supra* at 77. Thus, the probative force was not substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion in admitting the photographs.

*People v. Ahmed*, slip op. at 3-4.

It is well-established that "federal habeas corpus review does not lie for errors of state law." *Estelle*, 502 U.S. at 68 (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to

review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The Sixth Circuit has held repeatedly that the introduction of gruesome photographs of a victim's corpse in a murder case does not offend the Constitution when there is some legitimate evidentiary purpose for demonstrating the nature of the injuries. *See Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) ("The [state] court found, however, that the photographs were properly admitted as they demonstrated that Biros beat Engstrom rather severely and meticulously dissected her body with two different knives."); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) ("The Ohio Supreme Court directly addressed this evidentiary issue, concluding that the multiple photographs 'were introduced during the coroner's testimony to illustrate the testimony,' that '[e]ach photograph presents a different perspective of the victim,' and that the photographs 'were used to illustrate' the nature of the encounter that immediately preceded Skiba's death.") (citation omitted); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that "although the photographs were gruesome, they were highly probative"). The petitioner argues that the only contested point in the case was the identity of the shooter, and the photographs served no purpose other than to inflame the jury. The Court agrees that the probative value of the photographs was marginal. But it is not the function of a habeas court to recompute the balance that Rule 403 prescribes. The state court of appeals was satisfied that the potential unfair prejudice of the graphic photographs was not substantially outweighed by the scant legitimate purpose of the evidence. Whatever can be said of that

assessment, this Court cannot conclude that admission of the evidence deprived the petitioner of a fair trial. Therefore, there was no unreasonable application of Supreme Court precedent.

E.

Finally, the petitioner argues that the identification testimony should have been suppressed because it was the product of an illegal arrest. Certainly, when evidence is the fruit of police conduct that violates the Fourth Amendment, it must be excluded in many instances. *See Wong Sun v. United States*, 371 U.S. 471 (1963) (explaining the fruits of the poisonous tree doctrine). However, the Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

Michigan provides ample opportunity for litigation of Fourth Amendment claims. Typically, such claims are addressed before trial by means of a motion to suppress. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (holding that motions to suppress must be brought timely where the factual circumstances constituting the illegal arrest or seizure are known to the defendant in advance of trial). However, even absent objections in the trial court, Michigan appellate courts entertain Fourth Amendment claims where it appears that the evidence in question

affected the outcome of the trial. *People v. Harris*, 95 Mich. App. 507, 509-10, 291 N.W.2d 97, 99 (1980).

In this case, the petitioner's Fourth Amendment claim was the subject of a suppression hearing in state court. The trial court denied the motion to suppress, and after trial the petitioner appealed his conviction to the Michigan Court of Appeals, where he again presented his Fourth Amendment claim. The Michigan Court of Appeals addressed the claim and found no Fourth Amendment violation. *Ahmed*, slip op. at 4. The petitioner filed an application for leave to appeal in the Michigan Supreme Court presenting his Fourth Amendment claim. The Michigan Supreme Court denied leave to appeal. *People v. Ahmed*, No. 125082 (Mich. 2005).

It is quite clear that the petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim in the Michigan courts. The petitioner's disagreement with the state courts' conclusions on his Fourth Amendment claim does not render the state's procedural mechanism inadequate. The conclusion is inescapable, therefore, that the petitioner's Fourth Amendment claim is barred by the rule in *Stone v. Powell*.

### III.

The decision of the Michigan appellate courts was not contrary to or an unreasonable application of federal law as determined by the Supreme Court.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 9, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 9, 2008.

                                        s/Felicia M. Moses  
                                        FELICIA M. MOSES